## SMITH v. PHŒNIX BRIDGE CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

Appeal from Special Term, Erie County.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

---

## In re SMITH.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

1. MANDAMUS (§ 163*)—DEMURRER TO ALTERNATIVE WRIT—EFFECT.

A defendant in mandamus, who demurs to the alternative writ, admits the facts stated therein.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 343; Dec. Dig. § 163.*]

2. MUNICIPAL CORPORATIONS (§ 721*)—PARKWAYS—STREETS—STATUTES.

Under Buffalo City Charter (Laws 1891, p. 204, c. 105) § 310, providing that no street shall be laid to intersect any park approach without the consent of the park commissioners, and section 391, authorizing the city to lay out parks, public grounds, etc., the park commissioners have authority to permit the establishment of a street across a parkway.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 721.*]

3. MUNICIPAL CORPORATIONS (§ 721*)—PARKWAYS—STREETS—STATUTES.

Under Buffalo City Charter (Laws 1891, p. 204, c. 105) § 310, authorizing the park commissioners to control and lay out parks, etc., and section 394, authorizing the city to discontinue streets, the park commissioners may not at will withdraw their absolute and unconditional consent to the establishment of a street across a parkway.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 721.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MUNICIPAL CORPORATIONS (§ 657*)—STREETS—ABANDONMENT.

That streets across a parkway remained obstructed under the order of the park commissioners of the city of Buffalo from 1899 until 1908, when an alternative writ of mandamus to require the commissioners to remove the obstructions was issued, did not show an abandonment of the streets, though the six-year statute applies.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1429; Dec. Dig. § 657.*]

5. MANDAMUS (§ 143*)—JURISDICTION—LACHES.

In 1899 the park commissioners of Buffalo obstructed streets crossing a parkway. Persons interested made efforts to remove the obstructions without success, and in 1908 one of them obtained an alternative writ of mandamus requiring the commissioners to remove the obstructions. *Held*, that the right to the writ was not barred by laches.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 285; Dec. Dig. § 143.*]

Williams, J., dissenting.

Appeal from Special Term, Erie County.

Application of Mary J. Smith for a writ of mandamus to Charles Mosher and others, as Park Commissioners of the city of Buffalo, to compel the removal of obstructions across streets crossing a parkway. From a judgment sustaining a demurrer to the alternative writ, relator appeals. Reversed, with leave to plead over.

An alternative writ of mandamus was granted, requiring the respondents, the park commissioners of the city of Buffalo, to remove obstructions placed across Oak Grove avenue and Loring avenue, at their intersection with Humboldt Parkway, or to show cause why the same should not be done. The park commissioners demurred to the writ upon the ground that it did not state facts sufficient to constitute a grievance or to entitle the relator to such relief. The demurrer was sustained at Special Term, and from that order and judgment the relator appeals. Humboldt Parkway is one of the parkways of the park approaches of the city of Buffalo, and constitutes a part of the system of continuous park lands, park approaches, and parkways in said city, of more than seven miles in length, extending through and about the city at varying distances from the city limits, including Front avenue, from the Terrace to the Front, Porter avenue, Richmond avenue, and Bidwell Parkway, from the Front to Delaware Park, Humboldt Parkway from Delaware Park to Humboldt Park, and Filmore avenue from Humboldt Park to Seneca street.

It is stated in the writ that there is a large and rapidly growing population in the vicinity of the parkways, and extending for long distances beyond the parkways in all directions; that it is very important to the growth and welfare of the city that the public and persons residing in the vicinity of the parkways should have free and undisturbed access from all parts of the city to all other parts by streets crossing said parkways by short and convenient routes; that on and prior to November 8, 1899, Humboldt Parkway consisted of a greensward 86 feet in width, extending through its entire length, with driveways and sidewalks on each side of the greensward, each of said driveways being about 38 feet wide. It appears that the southwesterly and northeasterly boundary lines of said Humboldt Parkway, at the points where Oak Grove avenue and Loring avenue meet and cross the same, and for a considerable distance to the northwest and southeast thereof, constitute the southwesterly and northeasterly bounds of the park lands; that on or about October 10, 1891, a map or plat was filed in the Erie county clerk's office by the owner of the portions of Oak Grove avenue lying and extending easterly and westerly of Humboldt Parkway, and Loring avenue from Meech street to the southwesterly line of Humboldt Parkway, and showing Oak Grove avenue 60 feet wide, extending from Delevan avenue in a northeasterly di-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rection, continuously and as a street, about 900 feet, to and across Humboldt Parkway, and extending about 900 feet beyond said parkway to lands of the New York Central & Hudson River Railroad Company, and showing Loring avenue 60 feet wide, extending from Meech street in an easterly and northeasterly direction, continuously and as a street, across Humboldt Parkway and some distance beyond; that in or about the year 1891 Oak Grove avenue and Loring avenue were opened and graded as streets 60 feet wide, as laid out on the map, and were thereupon and thereafter used as public highways for travel by pedestrians and vehicles; that on or about June 5, 1893, a deed of Oak Grove avenue, from Delevan avenue to the southwesterly line of Humboldt Parkway, and of Loring avenue, extending from Meech street to the southwesterly line of Humboldt Parkway, was given to the city of Buffalo by the owner thereof, and the deed was accepted by the city, as appears by the proceedings of its common council; that Oak Grove avenue, both east and west of Humboldt Parkway, and Loring avenue west of Humboldt Parkway, were marked upon the official assessor's map of the city in ink as public streets within 15 years prior to January 1, 1895, and have ever since been and remained so marked on the assessors' maps; that in or about the year 1891 there was laid out and opened a driveway, with footpaths on each side thereof, said driveways and footpaths being the same width as Oak Grove avenue, across Humboldt Parkway, and at right angles thereto, directly and uninterruptedly and in a continuous straight line, connecting that portion of Oak Grove avenue running to and intersecting the southwesterly line of Humboldt Parkway with that portion of Oak Grove avenue running to and intersecting the northeasterly line of Humboldt Parkway, which continuation and connection was made upon the consent and authority of the park commissioners; that on or about the 1st day of October, 1895, a communication was presented to the park commissioners from the owners of the premises abutting on both sides of Loring avenue, extending from Humboldt Parkway easterly about 1,000 feet, stating that the said owners had sewered and paved Loring avenue, and had made and were engaged in making other improvements (which need not be mentioned), stating, further, that Loring avenue was so laid out as to connect with Loring avenue west of Humboldt Parkway, and asked the park commissioners to open Loring avenue across Humboldt Parkway, and that thereupon and on or about October 1, 1895, the park commissioners adopted a resolution granting said request and directing the superintendent of parks to do the work of so opening Loring avenue across Humboldt Parkway; that in or about the month of October, 1895, Loring avenue was so laid out and opened across Humboldt Parkway, with a driveway and footpaths each side thereof, connecting that part of Loring avenue on one side of the parkway with that on the other, the same as was done with Oak Grove avenue; that from the time Oak Grove avenue and Loring avenue were continued and connected across Humboldt Parkway they were left open continuously and uninterruptedly for public use and travel for vehicles and pedestrians until some time in the year 1899, a resolution having been passed by the park commissioners on or about November 1, 1898, that Loring avenue and Oak Grove avenue be closed between the roadways on the easterly and westerly side of Humboldt Parkway; that thereafter, and in the year 1899, the park commissioners built and erected obstructions, consisting of wooden fences about three feet in height, directly across Oak Grove avenue and Loring avenue, along the easterly line of the westerly driveway of Humboldt Parkway, and also along the westerly line of the easterly driveway of Humboldt Parkway, which obstructions have ever since remained there, and totally obstructed and prevented the use of the roadways and footpaths on each side of the avenues across Humboldt Parkway, either by vehicles or pedestrians, and the park commissioners have refused to remove the obstructions.

It appears from other statements contained in the writ what efforts have been made by persons interested, including the relator, who resides upon certain premises located on the corner of Loring avenue and Humboldt Parkway, to remove the obstructions, and how the relator is injured thereby, and that no application has ever been made by the owners of lands on Oak Grove or Loring avenues to discontinue the same, or any part thereof, and the necessity for keeping the said avenues open across said parkway, and the reason for

closing the same; the reason for closing the same, briefly stated being to furnish a speedway for fast driving in Humboldt Parkway, from Kensington avenue to Delevan avenue, a distance of about half a mile. The speedway has been made and used exclusively for that purpose, and horses driven at so high a rate of speed as would make it dangerous for persons to cross the parkway at these points.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Simon Fleischmann, for appellant.
Samuel F. Moran, for respondents.

KRUSE, J. The defendants, the park commissioners, by their demurrer admit the facts stated in the writ, but challenge the right of the relator to require them to remove the obstructions placed across Loring avenue and Oak Grove avenue, where they intersect Humboldt Parkway; their contention in that behalf, as I understand it, being that no legal highway was ever effected across the parkway at these points, and that in any event the park commissioners may at any time withdraw the consent heretofore given by their predecessors in office, and acted upon in opening said avenues across said parkway, and may close the avenues where they cross the parkway at any time, when, in their judgment, it is deemed advisable to do so.

By the park act (chapter 165, p. 293, of the Laws of 1869), under which the board of park commissioners was originally organized, the board was given full and exclusive power to govern, maintain, and direct, and lay out and regulate, parks and approaches thereto, and the streets connecting the same, possessing all the power and authority of the common council of the city respecting public squares and places in the city, and this power and authority the park commissioners have ever since continued to exercise. The act provided for acquiring lands for parks and approaches thereto by condemnation proceedings, and it was provided by the eleventh section of the act that:

"The said lands shall vest forever in the city of Buffalo, for the uses and purposes in this act mentioned, and the said park commissioners shall be entitled to enter upon, take possession of, and forever use the said land for the purposes of a park or parks, approaches thereto, and streets connecting the same."

And by the fourth section of the act it was provided:

"And the parts of all streets, avenues and highways, now laid out as running through said pieces of land, are hereby closed and discontinued so far as the same would run through or intersect said pieces of land."

In 1885 the charter of the city of Buffalo was revised (chapter 181, p. 320, of the Laws of 1885), and certain sections were included therein relating to parks. The power of the park commissioners after this revision of the city charter was passed upon by the Court of Appeals in the case of Bork v. City of Buffalo et al., 127 N. Y. 64, 27 N. E. 355, which involved the validity of a contract for paving one of the parkways of the city, made by the park commissioners, and it was there held that the park commission was an independent department of the city government, with power to locate parks, lay out approaches thereto, and appropriate and condemn lands for those purposes, and to

maintain parks and approaches for the benefit of the city, independently and without the consent or approval of any other body or officer, and that the said addition and amendment to the city charter, in 1885, continued the park commission as such independent officers, retaining such exclusive power over the parks and approaches thereto.

It should be further noted that in the original act passed in 1869, in defining the general powers of the park commissioners regarding the parks, approaches, and streets connecting the same, it was provided that they should have all the power and authority possessed by the common council of the city, in respect to the public squares and places in said city (section 21, c. 165, p. 301, of the Laws of 1869); while by the addition and amendment to the charter in 1885 it was provided that the park commissioners should have all the power and authority then possessed by the common council in respect to the public streets, sidewalks, squares, and places in said city (section 23, c. 181, p. 327, of the Laws of 1885), interpolating the words "streets" and "sidewalks." The added section 23 was carried into the revision of the city charter passed March 27, 1891 (section 310, c. 105, p. 204, of the Laws of 1891), and is a substantial re-enactment as regards the provisions now under consideration, except that it is therein specifically provided that:

"No new street shall be laid out to intersect any park approach, without the consent of the park commissioners." Section 310, c. 105, p. 204, of the Laws of 1891.

And it continues the former provision that the approaches shall be deemed to include all lands within the boundaries thereof and such portions as may be within the boundaries of intersecting streets, but giving the common council jurisdiction of the intersecting streets up to the curb line of the approach.

Section 391 of the revised city charter provides:

"The city may lay out, enlarge and alter parks, public grounds, squares, alleys, canals, basins, slips or other public waters, and cause them to be surveyed, described and recorded in a book to be kept by the city clerk." Chapter 105, p. 221, of the Laws of 1891.

It is not claimed that Oak Grove avenue and Loring avenue are not public streets, except where they cross Humboldt Parkway. It is, however, contended by counsel for the respondents that neither the park commissioners nor any other city official had the right to lay out or make a street, by dedication or otherwise, across the park approach. As regards the amendment of 1891, forbidding a new steeet to be laid out to intersect a park approach without the consent of the park commissioners, he contends that the amendment means that the common council may not lay out a street which will lead up to a parkway, and from which traffic shall pass to the parkway, without the consent of the park commissioners, but that the park commissioners have no power to lay out a street across the parkway.

I have no doubt the park commissioners could so limit their consent; but I think their power is not thus limited by the act. I think it includes authority to permit a street to cross over as well, and that under the facts and circumstances of this case the avenues in question

became public highways at their intersection with Humboldt Parkway. If I am right in that regard, there remains but the single question as to whether the park commissioners may at will withdraw their former consent, which was absolute and unconditional, and unlimited as to time, and close the avenues at their intersection with the parkway, to the detriment of a property owner, such as the relator.

Section 394 of the city charter reads as follows:

"The city may discontinue or contract a street or alley, or any part of it, upon the written application of two-thirds in number of the owners of the lands fronting on the street or alley, the lineal front of whose lands shall constitute two-thirds of the lineal front of all the lands on the street or alley. A continuous street or alley, portions of which bear different names, is to be considered as a single street or alley." Section 394, c. 105, p. 221, of the Laws of 1891.

The late Justice Childs had this question before him in the case of Holtz v. Diehl, 26 Misc. Rep. 224, 56 N. Y. Supp. 841, and he reached the conclusion there that the park commissioners have no authority to close any portion of any regularly laid and open city street by resolution or in any other manner than that provided in the charter. That conclusion commends itself to my judgment. Some of the most important streets of the city intersect these parkways, and have been maintained there for years. If the park commissioners can close these two avenues, I do not see why they may not do so as to all of them. While the park commissioners have the control and may regulate the use of intersecting streets, where they cross the parkways, it does not seem reasonable, that after having consented, as was done in this case, they may summarily and at will discontinue and terminate their existence as public thoroughfares across the parkway. It seems to me that the purpose of the amendment of 1891 was to permit streets to be laid across the park approaches with the consent of the park commissioners. It is also to be observed, in this connection, that this permission does not extend to the parks or park lands. It is carefully limited to park approaches.

The point is also made by respondents' counsel that the streets have been closed at these intersections so long as to constitute an abandonment. I do not think it can be so held, even if the six-year statute applies.

Neither do I think the point well taken that the relator is not entitled to the writ because of laches. By their demurrer the defendants concede the facts as stated in the writ, and I think we would not be warranted in sustaining the demurrer for that reason.

The interlocutory judgment sustaining the demurrer should therefore be reversed, with costs, with leave to the defendants to plead over upon the usual terms. All concur, except WILLIAMS, J., who dissents.